JONES, ADM'R, v. LEWIS.

An estate is liable to an attorney at law, to pay a reasonable price for necessary professional services, rendered at the instance of the administrator.

The general rule is that the pay for services, including those of an attorney, is due as soon as the service is rendered, and the statute of limitations begins to run immediately; this does not apply to particular acts of service, where there has been an entire contract to perform a continuous service, as, for example, to advise and assist an administrator in the settlement of an estate, or to prosecute, or defend a suit to final judgment; in such cases the pay is not due until the service is terminated by performance or by discharge of the attorney.

It seems, that demands against an estate, which accrue after the decease of the testator or intestate, must be presented to the administrator for allowance, and to the Chief Justice for approval.

It seems, that under a general retainer of an attorney at law, to attend to all of a man's business, without stipulation as to time and mode of payment, the fee for each act of service, would be due as soon as the service was rendered, and the statute of limitations would begin to run immediately.

If an administrator should employ an attorney, by a continuous and entire contract, to advise and assist in the settlement of the estate, for a certain compensation, and die, resign or be removed, and the new administrator should continue

the attorney in his service, the presumption would be, that the first contract was continued or ratified ; but the law will not raise a presumption of such contract with the former administrator ; and in the absence of proof of its having been made, the attorney would be entitled to demand compensation for his services, as they were performed ; and the statute of limitations would run accordingly.

Appeal from Matagorda. This suit was brought to recover professional services, rendered as an Attorney and Counsellor at law, to Kingston, in his life time, and to three several administrations on his estate. The first administration on the estate of Kingston, was granted to Thomas Pilkington, on the 20th May, 1845, who continued as such until his death, sometime before the 23rd February, 1846, as on that day, administration was granted to Jacob Quick, who held the appointment until his death, sometime before the 25th January, 1847 ; and on that day, administration was granted to Catharine Quick afterward Catharine James, who held it until sometime before the 25th January, 1849, when the administration was granted to Jones, the defendant. The account, for the different services, was made out and presented to Jones, the present administrator *de bonis non*, of the estate of Thomas Kingston, and by him rejected ; and the suit was commenced thereafter, within three months from the time of the presentation and rejection of the claim.

The defendant, among other defences, set up the statute of limitation of two years, in bar of the plaintiff's action. There were various charges asked by the defendant, and denied by Court, and exceptions taken to the ruling of the Court in the progress of the trial. The Court charged the jury, " that if it " appeared that plaintiff was the attorney of the estate of " Kingston, deceased, generally, from the time of the appoint- " ment of the first administrator, in 1845, up to the time he " was discharged as such attorney, in 1849, by Mrs James, " who administered on said estate for the third time, limita- " tion did not begin to run, as to any of his charges for attor- " ney's fees against said estate, until the time of his discharge, " in 1849."

The jury returned a verdict for the plaintiff, on which a judgment was rendered; and the defendant appealed.

*Allen & Hale,* for appellant. I. The demurrer should have been sustained. The remedy of the plaintiff, as against the estate, is given and regulated by the Probate Act of 1848, and must conform to its provisions. That Act seems to require, in the only Section in which it speaks of attorney's fees, the allowance of the Chief Justice: and this is not alleged to have been given. (Hart. Dig. Art. 1188.)

II. The first, second, fourth, sixth and seventh charges asked by the defendant, should have been given, and the charge actually given, as stated in the second bill of exceptions, should have been modified accordingly. The error of the Court below consists in supposing that an estate or succession under our statutes, is a fictitious judicial person, capable in law of making contracts, and that therefore Lewis was, when employed by the first administrator, at once made the attorney of the estate, and so continued through all the intervening administrations and interregnums until discharged. This might be true, under the Roman and Spanish law, which regarded the unadministered estate, *hereditas jacens,* as a representative of the deceased, and a kind of moral person; but this fiction of the law was peculiar to those systems of jurisprudence, and was not adopted by the Common Law. (Davis' heirs v. Elkins, *et al,* 9 La. R. 135; Angell on Lim. 55–58.) The Common Law, on the contrary, made the administrator—not the estate—the representative and successor of the deceased; and vested the personal property at once in him. (2 Wheat. Selwyn, 782.) And our system of the administration of estates is to be interpreted and controlled by the Common Law. (Hart. Dig. Art. 127, 1244.)

It is the administrator, therefore, and not the estate, who employs attorneys for the necessary management of suits relating to the property of the decedent; and such employment, as in other cases, must cease with the death or resignation of the prin-

45

cipal. It follows that the services rendered by Lewis to the successive administrators of the estate of Kingston, were not continuous, but distinct—that his demand for his fees accrued immediately on the expiration of each administration, and constituted a separate claim against the estate, which ought to have been presented within the period prescribed by law to the succeeding administrator for allowance, and that the period of limitation commenced to run as to each item, from the time of the close of the administration in which that item accrued. The three first entries in the account were consequently barred: as well as the remaining items which were for distinct services rendered more than two years before the suit. (5 La. R. 12.)

III. The tenth and eleventh charges should have been given. The plaintiff, having collected money due the estate, was bound to pay it over, and look to the administrator in the regular course of administration for payment for his services. He cannot be allowed to pay himself out of the money belonging to the estate in his hands, nor has he any lien on such money for this purpose. (Hart. Dig. 1159, 1188, 1189; January v. Mansell's adm'r, 4 Bibb, 566; West's Syndic v. Carleton & Lockett, 8 La. R. 253.)

The plea in reconvention was therefore good, and the jury should have found for the defendant against the plaintiff the amount collected by the latter: and they should also have rejected all the items in the debit side of plaintiff's account, as representing demands which had accrued more than two years before the institution of the suit.

*J. Denison*, for appellee. I. Limitation does not run, because the services claimed were continuous, and the statute cannot run until after he ceased to be attorney.

II. Under the English system of administrations of intestates' estates, the administrator is the legal owner of the personal property, coupled with a trust; under the Civil Law, the curator is the mere manager and agent, and the succession

is the owner of all the property of deceased. Our system is founded on the Civil and not on the English system. The adoption of the Common Law, in 1840, did not introduce the English system for two reasons, 1st. The law of Louisiana, as adopted by the Constitution, was in force, although amended ; and this law was saved from the effect of that enactment. 2nd. The English system is no part of the Common Law ; it is the entire offspring of the Canon Law and remedial statutes.

LIPSCOMB, J. We shall omit noticing *all* the points presented by the assignment of errors, and confine our investigation to such as we believe to be the most important. From the second bill of exceptions, it appears that the Judge charged the jury, " That if it appeared that plaintiff was the attorney " of the estate of Kingston, deceased, generally, from the time " of the appointment of the first administrator in 1845, up to " the time he was discharged, as such attorney, in 1849, by " Jones, who administered on the said estate for the third time, " (a mistake, he is the fourth administrator,) the limitation " did not begin to run as to any of his charges for attorney's " fees against said estate, until the time of his discharge as said " attorney in 1849, and that the relation of client and attorney " could continuously exist, between the plaintiff and said es- " tate, from the time he was employed as such by the first ad- " ministrator in 1845, until his discharge, in 1849, by the " administrator." The balance of the bill of exceptions is not material, and is therefore omitted ; it charges, in subtsance what had already been charged, that the estate was liable to the attorney for all the services running through the three administrations.

We believe, that the proposition laid down by the Court below, that the statute of limitations did not begin to run against a claim, by an attorney, for his fees, until he was discharged, is not true. In the absence of any stipulation to the contrary, the rule is believed to be, that when the service is rendered or

performed, the right to demand payment accrues, and the statute then commences to run. This rule applies to every kind of service; and we can perceive no reason founded in law or sound reason or policy, for claiming an exception in favor of services performed by an attorney, at the instance and request of an administrator; and it may well be doubted, if an administrator, in his representative capacity, would be permitted to make an engagement for services necessary to the interest of his trust, and postpone the payment to a period of time, that would present an obstacle to the final settlement and close of his administration. If the interest of the estate required the service of an attorney, he would be permitted to contract for such service; and the attorney performing the service, would be entitled to his pay, when the service was performed; and, if not paid, he could, on refusal of the administrator to allow his claim, bring suit in the District Court, where his claim, if reasonable, would be adjudicated in his favor, and certified to the Probate Court for payment in the due course of the administration. If allowed by the administrator, it would be the duty of the Probate Judge, unless he thought it unreasonable, to approve the claim, and order it to be paid. (See Portis v. Cole and another, adm'r, *Ante*, 157.) In the case cited, we departed from the rule of the Common Law, for reasons then given, so far as to sustain the right of an administrator, to bind the estate of his intestate, on a contract to pay a reasonable price for necessary professional services; but policy requires that they should not be allowed to embarrass the settlement of an estate, by such contracts. We believe, if it were admitted that a contract with an attorney, for services, by an administrator, would, *per se*, be continuous and extend beyond the term of his administration, (which, however, is not admitted,) and run through any and all subsequent administrations on the same estate, yet it would not necessarily follow, that payment for services rendered under contracts with previous administrators, should be suspended, and they never presented for settlement with the Probate Court.

The services, rendered to each administrator, should be held as a distinct claim, and settled within the time prescribed, by law, as a limitation to a right to recover on a contract for the payment of money, not in writing. Every action brought for services rendered to the estate, should be prosecuted within the time prescribed, after the services rendered, or should be held as barred by the statute of limitations.

There is no distinction, in principle, between this case and one where the client had contracted with his lawyer, to attend to all of his litigation, without stipulating as to the time and mode of payment for services; and it is clear, that in the last, the attorney would have a right of action for services, as soon as he had rendered the service, and from that time the statute would commence to run.

This point may be further illustrated, by a reference to a part of the record of this case. It appears that a suit had been commenced under the first or second administration that had been granted on this estate, for the partition of land, the undivided half of which was claimed to belong to the estate. This suit was not finally disposed of in the District Court, until some time in thirty-eight or nine; and it appears that the plaintiff below, was attorney for prosecuting the suit for a partition, and had brought the suit. Now, if he was the counsel for the estate, the statute did not begin to run against a claim for his services, until the suit was terminated, because not until then, had he a right to demand payment for his services, unless there had been a stipulation for payment in the progress of the suit; or if he had been discharged before the termination of the suit.

We do not say that there could be no contract between the attorney and the first administrator, that could, under any circumstances, be continuous. If the contract between the first administrator and the attorney, had been that so far as the professional services of the attorney should be required, the attorney should render such service, until the estate was ready for a final settlement, and that the attorney was then to receive

a certain compensation, the contract would then have been entire, including compensation for the whole service; in such case, if the administrator died, resigned or was removed, and the new administrator continued the attorney in his service, the presumption would be, in the absence of proof to the contrary, that the first contract was continued and ratified; but the law would raise no such presumption of such contract with the first, in the absence of proof of it having been made; and the attorney would be entitled to demand compensation for his services, as those services were performed.

In this case, the account on which rested the attorney's claim, as presented to, and rejected by, the administrator, was not for the aggregate of the value of his services for the estate, under a contract; but it was composed of different items of services rendered on different occasions. Now, for each of those services, he had a right, in the absence of a special stipulation to the contrary, as we have seen, to demand payment, as soon as the service was rendered; and if he failed to do so, until barred by the statute of limitations, he was barred from a recovery. Some of the services, sued for, were certainly barred by the statute, before the commencement of this suit. (See Hart. Dig. Art. 2377.) The Court below, in the charge we have discussed, ruled out the bar as to the whole claim, and held it not to apply to any of them.

The other assignments will not receive particular notice, as it is believed the errors of the Court, on those points, arose from a mistaken opinion of the law on the question discussed. The judgment is reversed and the cause remanded.

Reversed and remanded.