## CALDWELL v. JONES et ux.

No. 4068.

Court of Civil Appeals of Texas. Amarillo.

Sept. 20, 1933.

Rehearing Denied Oct. 25, 1933.

See, also (Tex. Civ. App.) 42 S.W.(2d) 1052.

Whitaker & Peticolas, of El Paso, for appellant.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellees.

MARTIN, Justice.

Appellant brought suit for attorney's fees alleged to be due him by appellees. His petition was in two counts. In the first he declared upon an express contract. The finding of the jury was against him upon this issue and, being unchallenged here, passes out of the case.

In his second count he sued upon a quantum meruit, setting out in detail the legal services rendered appellees. These in the main were, briefly, that appellees had executed mineral leases upon two tracts of land, which provided for certain development or, in lieu thereof, the payment of rentals. Certain core drillings were made by the lessees which disclosed the presence of potash in commercial quantities on the lands under lease, and there arose a dispute between the parties as to whether such core drillings relieved the lessees from the payment of annual rentals provided for in their lease agreement. The matter was handled by appellant for appellees, and his services consisted in the main of negotiations, both personal and by correspondence, which eventuated finally in the execution of a supplemental or compromise agreement under the terms of which appellees extended the term of the original leases for approximately five years, or until April 30, 1935, and the lessees agreed in writing to pay the sum of $1,000 cash and the further sum of $8,640 on or before May 1, 1928, and $9,640 on or before November 1, 1928, and the same sum every six months thereafter during the term of the lease. These respective payments were made as stipulated until May, 1931.

In the second count of his petition appellant specifically alleges that: "He procured the contract and compromise and adjustment of the differences existing between the said O. P. Jones and his wife, Josephine Jones, and M. Agress, and that the sum of approximately $90,000.00 has been paid to the said O. P. Jones and his wife by virtue of said contract as aforesaid. That the reasonable value of said services of the plaintiff herein to the defendants herein as attorney in procuring said compromise settlement and agreement whereby the said moneys were paid is the sum or value of ten per cent. of the total amount of moneys received by the said O. P. Jones and his wife."

Subdivision (a) of special issue No. 2, given by the court to the jury, is in the following language: "What do you find and believe, from the evidence, is the reasonable value of the services rendered by the plaintiff in connection with the potash leases on the defendants' lands from the time the dispute arose as to the construction of the leases dated December 15th, 1924, and February 12th, 1926, up to and including the time the contracts dated January 20th, 1928, and January 27th, 1928, were entered into?"

The answer of the jury to this issue was: "5% of $92,446.00."

The jury further answered that appellant had already been paid the sum of $2,558 by appellees for his services.

Motion was made by appellant to enter judgment for a balance of $2,064, being the difference between the amount found by the jury and the amount already paid.

The appellees in their answer specially excepted to the second count of the petition of appellant, claiming that the same showed on its face to be barred by the two years' statute of limitations. They further specially pleaded such statute in bar of plaintiff's cause of action. They likewise made motion for judgment, contending that since the jury had found against any express contract, and there being no evidence to sustain the second count of the petition, and it appearing to be barred by the statute of limitations, that a judgment should be entered for them. The court sustained their motion, and specifically found that "any claim which plaintiff J. M. Caldwell may have against the defendants for services based upon a quantum meruit claim for the reasonable value of such services is barred by the statute of limitations and further that there is no support in the evidence for the submission to the jury of subdivisions (a) and (b) of special issue No. 2."

No objections appear in the record to subdivision (a) of special issue No. 2, as set out above, and it is apparently acquiesced in by all parties as a correct statement of the time when the services of appellant ended, as well as the character of the services. Both the pleading and proof seem to sustain the correctness of the brief statement therein contained. It shows that the last lease contract was entered into on January 27, 1928, and it is appellees' contention that any fee for serv-

ices became due on this date, and appellant's suit, not having been filed until November, 1930, is barred by the two years' statute of limitations.

The pleading and proof in this case show that appellant's services had been completely performed on January 27, 1928, and that he had the legal right to demand payment on that date. His cause of action had then "accrued," and limitation therefore began to run against him.

A portion of article 5526, R. S., is as follows:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * *

"4. Actions for debt where the indebtedness is not evidenced by a contract in writing."

"The phrase 'cause of action' as used in the statute of limitations means 'every fact which it would be necessary for the plaintiff to prove, if traversed, in order to support his right to the judgment of the court.'" 37 C. J. page 808.

"'The accrual of a cause of action' means the right to institute and maintain a suit; and whenever one person may sue another a cause of action has accrued and the statute begins to run." 37 C. J. page 810.

Appellant testified, in substance, that a reasonable fee in the instant case for the services rendered was 10 per cent. of the amount collected under the lease contract, and he argues from this, that since the collections under the compromise lease agreement ran through 1928, 1929, 1930, and 1931, his cause of action did not accrue until the time of these payments, and especially since a course of dealing between appellant and appellees had existed for twenty-five years under which appellee Jones had paid to appellant a per cent. of certain collections made by him.

We are of the opinion that neither the pleading nor the proof sustains appellant's contention. When did appellant have the legal right to sue appellees, assuming as conclusively proven every allegation of his petition? If such right existed on January 27, 1928, his cause of action is clearly barred. At that time the legal services required of him had been completely performed. It is neither alleged nor proven that it was part of his duty to collect in this instance any of the annual rentals under the compromise agreement. If he had sued immediately upon the completion of his services, could Jones, the appellee, have pleaded that the deferred payments under the last leases had not matured and therefore his legal services were worthless or at least were not due? We think

not. The contractual obligation of appellant was not to collect the money to become due under the contract. His services had to do alone with the negotiations for and the consummation of a compromise agreement. These were completed on the date last mentioned. If appellees owed the money then, obviously appellant's cause of action had then "accrued." The one is a necessary corollary of the other.

We quote:

"When the service is rendered or performed, the right to demand payment accrues, and the statute then commences to run." Jones v. Lewis, 11 Tex. 359.

"If the attorney has been employed under a general retainer to attend to all the client's business without any agreement as to time and mode of payment, the fee for each act of service is due when rendered and limitation commences immediately." 5 Tex. Jur. 544.

It is argued for appellant that until the payments were made it could not be known what the services were reasonably worth, and therefore a contingency existed which tolled the statute of limitations until such time. Such contingency as a condition of payment is not shown to exist. The engagement of appellant under the allegations of the second count of his petition was the performance of certain legal services for which he was to be paid reasonable compensation, not a contingent fee or a fee dependent upon the happening of something in the future. What appellees might likely receive under the compromise contract and the amount thereof may have been items which a trial jury or court could take into consideration in determining the value of appellant's services, but in no event, it seems to us, could his right to all compensation be controlled by such a provision, in the absence of a specific agreement to that effect. If the statute did not begin to run against appellant until payments under the compromise contract were made, he could not have sued until then, which necessarily implies that prior to such time appellees could plead lack of such payments as a bar to any suit brought by appellant for compensation, and that complete failure to make such payments would altogether bar appellant from any right to compensation, although he had performed legal services under an implied agreement to be paid a reasonable fee. This could not be, but is the illogical conclusion to which we are driven if we adopt appellant's theory.

We deem it unnecessary to discuss the alleged insufficiency of the evidence mentioned by the trial court, in view of the above holding.

The judgment is affirmed.