Robert THOMASON, Appellant,

v.

Doug FREBERG, Appellee.

No. 1421.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Robert W. Dupuy, Corpus Christi, for appellant.

Guy Leland Watts, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

The trial court denied relief in appellant's action for bill of review and he appeals. Doug Freberg, appellee, sued Dr. Robert H. Thomason, appellant, on July 25, 1975, for labor and materials performed and furnished on Thomason's ranch. Thomason answered, alleging among other things, that Freberg's cause was barred by the statute of limitations. Trial to the court without a jury was begun on October 14, 1976. The trial was recessed then resumed on November 18, 1976, and concluded on March 4, 1977. The court then took the cause under advisement. Thereafter, on October 30, 1977, the court signed and ordered entered its judgment in favor of Freberg for $1,917.36. The judgment was not entered until February 1, 1978.

Prior to the rendition of judgment, the trial judge, on October 28, 1977, called Mr. Robert Dupuy, counsel for Thomason and informed him that the court had decided to grant judgment in favor of Freberg and against Thomason, and that he would probably render judgment sometime the following week. The trial judge informed Dupuy that he would have a copy of the judgment forwarded to him upon entry, thereof.

Dupuy filed a request for findings of fact and conclusions of law on November 4, 1977. When he did not later receive a copy of the judgment, Dupuy telephoned the court coordinator on November 14, 1977, and asked whether the judgment had been entered. The court coordinator informed Dupuy that judgment had not been entered, and that the file of the case was still on the Judge's desk.

On November 28, 1977, Dupuy again queried the court coordinator by phone and again was informed that the judgment had not been entered. Later, on December 13, 1977, Dupuy requested an associate of his law firm to personally ask the court coordinator about the status of the case. The associate was informed that the judgment had not been entered. On the same day, Mr. Guy Watts, Freberg's counsel, sent notice by letter to Dupuy that the trial judge had entered judgment on October 30, 1977.

Dupuy never received notice from the clerk of the court of entry of the judgment as required by Rule 306d, T.R.C.P. That rule reads as follows:

"Immediately upon the signing of any final judgment or other appealable order, the clerk of the court shall mail a postcard notice thereof to each party to the suit as provided in Rule 21a. Failure to comply with the provisions of this rule shall not affect the finality of the judgment or order."

The parties stipulated that had Dupuy received proper notice, he would have appealed the judgment, but by the time he did receive notice, the appeal time had expired.

Consequently, Thomason filed this bill of review proceeding seeking to set aside the October 30, 1977, judgment and to have the court render judgment that Freberg take nothing in his original suit. Thomason's asserted grounds for the reversal and rendition contended that Freberg's cause of action was barred by the two year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5526

(1958), and that as a matter of law, Thomason was not liable to pay Freberg because Thomason's deceased wife, Dr. Elizabeth Thomason, had contracted for the services, and not Dr. Robert Thomason. He further asserted that the trial court failed to credit $500.00 against monies owed by Thomason to Freberg, and that attorneys fees should not be allowed because no liability could be shown.

The bill of review hearing was held on May 26, 1978, before the trial judge who decided the previous cause. The judgment in the bill of review proceeding states that evidence other than stipulations was heard, but the record does not reflect any other evidence. Appellant's brief, however, specifies that all of the evidence introduced below consisted of stipulations, together with the statement of facts, exhibits, and transcript from the previous cause. And, since this statement is unchallenged by the appellee, we will accept it as true. Rule 419, T.R.C.P.

On August 4, 1978, the trial judge signed a judgment denying the bill of review. The trial court filed findings of fact and conclusions of law which stated that the previously stipulated facts were true and also that the reason for Dupuy's failure to file a motion for new trial or to perfect an appeal in the previous cause was the "information received by Thomason's counsel from the court coordinator or the court clerk." The court also found as a fact that Dupuy was diligent in trying to determine whether judgment had been entered in the prior suit. The court then concluded: "Robert Thomason would be entitled to the relief prayed for in this cause except that it is the opinion of this court that the judgment entered in (the previous cause) on October 30, 1977, was a correct judgment." The trial court filed no findings of fact or conclusions of law dealing with the merits of the defenses asserted by Dr. Thomason.

At the outset, we note that this is not the usual type of bill of review proceeding. Most bill of review proceedings follow the rendition of a default judgment. In this case, however, the original suit had been tried on its merits. We are, therefore, placed in the similar situation presented by the appeal in *Petro-Chemical Transport Co., Inc. v. Carroll*, 514 S.W.2d 240 (Tex.Sup. 1974).

In *Petro-Chemical*, the Court reviewed the general rule that the party moving for a bill of review must allege and prove: 1) a meritorious defense to the cause of action alleged to support the judgment, 2) which he was prevented from making by the fraud, accident, or wrongful act of the opposite party, 3) unmixed with any fault or negligence of his own. Accord, *Baker v. Goldsmith*, 582 S.W.2d 404, 407 (Tex.Sup. 1979). The Court then stated on page 244 that the above three-part test "does not govern the disposition of all bill of review cases." In this connection, according to *Petro-Chemical*, one seeking a bill of review need not prove the second element above when the clerk fails to send the Rule 306d notice.

The parties to this case stipulated that no Rule 306d notice was "received." *Petro-Chemical* stated that a bill of review may be predicated upon the clerk's failure to "send" the notice required by Rule 306d. As can be seen, the parties did not utilize the failure to "send" language used in *Petro-Chemical*. Where the parties agree that a certain form of notice has not been received, there is a presumption that the notice was not mailed, and where there is no evidence to the contrary, the fact finder must find the absence of the mailing. See *Sudduth v. Commonwealth County Mutual Ins. Co.*, 454 S.W.2d 196 (Tex.Sup.1970). Because there is no evidence to the contrary in the record here, it can be properly inferred that the clerk did not "send" the proper notice to appellant and that the second requirement of *Petro-Chemical* is thereby met.

Having established the second part of the three-part test above, Thomason was only required to show elements 1 and 3 above. As to element number 3, asking whether Dupuy was diligent, the trial court found the Dupuy was, in fact, diligent in trying to discover the entry of the judgment.

At this juncture, appellee Freberg contends that appellant's points of error need not be considered and the judgment denying the bill of review should be affirmed because, as we interpret his argument, Thomason showed no evidence to support the trial court's finding of diligence on element 3 above. In other words, he argues that the evidence shows that Dupuy was negligent as a matter of law. To support this argument, Freberg submits that, taken together, the following acts show negligence as a matter of law: 1) the judge's oral notice to Dupuy that the judgment would be entered the following week; 2) Dupuy's failure to call for 17 days after his notification by the trial judge (outside the time for filing a motion for new trial under Rule 329b(1), T.R.C.P.); 3) Dupuy's failure to call the clerk or the judge at any time; and 4) Dupuy's reliance on the court coordinator whose official duty was not to apprise litigants of the status of pending litigation but only to administer the court's docket. We do not agree with Freberg's argument.

In *Petro-Chemical*, counsel for the party moving for a bill of review was similarly apprised by the trial judge, before actually signing the judgment, that he would be rendering judgment for the plaintiff. Plaintiff's counsel then sent a copy of a proposed judgment to defendant's counsel, who responded by sending the judge and opposing counsel objections to the form of judgment after the date the judgment was signed and entered. Neither the trial judge nor opposing counsel responded to the belated objections to the form of the previously rendered judgment. Defendant's counsel, furthermore, never contacted the court clerk whose official duty was to apprise litigants of the status of pending litigation. *Hanks v. Rosser*, 378 S.W.2d 31, 34 (Tex. Sup.1964); *Kelly Moore Paint Co. v. Northeast National Bank*, 426 S.W.2d 591 (Tex. Civ.App.—Fort Worth 1968, no writ). Seventeen days after the judgment was signed, defendant's counsel called the trial judge, who, because of a busy schedule, had only a hazy recollection of defendant's case. The judge told defendant's counsel he had received the defendant's objections. to the

form of judgment and would give the defendant a chance to present them. Defendant's counsel later discovered the earlier entry of judgment and filed a bill of review.

The trial court in *Petro-Chemical* granted the defendant's bill of review after a jury trial. The Court of Civil Appeals reversed, holding that defendant's failure, among other things, to contact the clerk, who had the official duty to apprise him of the status of the case, his failure to call the trial judge until after the ten day period for filing a motion for new trial, and his misplaced reliance on the trial judge's statements showed lack of diligence. Further, it stated that the opposing counsel had no duty to notify defendant of the entry of judgment. In essence, the Court of Civil Appeals stated that in order to show diligence, a party must have relied on the statements of a court official who has an official duty to make those statements. *Carroll v. Petro-Chemical Transport, Inc.*, 502 S.W.2d 871 (Tex.Civ.App.—Beaumont 1973) *rev'd*, 514 S.W.2d 240, 243 (Tex.Sup. 1974).

The Supreme Court disagreed and stated that some evidence of diligence had been shown. See Rule 329b(5), T.R.C.P.; see also *Plains Growers, Inc. v. Jordan*, 519 S.W.2d 633, 636 (Tex.Sup.1974).

 We know of no official duty that a trial judge has to apprise litigants of the entry of judgment. The traditional rule has been that once a trial court properly gains jurisdiction over a party, that party is expected to keep himself informed of the proceedings and judgment rendered in the case. *Pentikis v. Texas Electric Service Co.*, 470 S.W.2d 387, 390 (Tex.Civ.App.— Fort Worth 1971, writ ref'd n. r. e.). See also *Plains Growers, Inc. v. Jordan*, supra; *Jordan v. Corley*, 42 Tex. 284, 286 (1875). Rule 306d, T.R.C.P., was enacted to require the clerk to give notice to all parties of the signing of the judgments. Furthermore, it is clear that opposing counsel has no official duty to apprise opposing counsel of the entry of a judgment. See *Banks v. Crawford*, 330 S.W.2d 243 (Tex.Civ.App.—Hous-

ton 1959, writ ref'd, n. r. e.). In light of the fact that the Supreme Court took such non-official actions into account in determining the diligence of the parties in *Petro-Chemical*, the movant's inquiries and correspondence may be taken into consideration, under proper circumstances, when determining the movant's diligence, even though the inquiries are not directed to one whose official duty it is to disseminate that information.

■ In keeping with this rule, the inquiry traditionally used to determine whether a party has been diligent is whether the litigant and his counsel used such care as prudent and careful men would ordinarily use in their own cases of equal importance. 4 McDonald Texas Civil Practice sec. 18.27.5 (1971). This issue is for the finder of fact. *Lyons v. Paul*, 321 S.W.2d 944, 950 (Tex.Civ.App.—Waco 1958, writ ref'd, n. r. e.).

■ In the instant case there is evidence that the trial judge told Dupuy that he would send him notice of the entry of judgment, but the judge failed to do so. In addition, Dupuy contacted the court coordinator several times in order to determine whether the judgment had been entered. We cannot say that Dupuy's reliance and actions were lacking prudence. Freberg argues, however, that Dupuy could not rely on the court coordinator because it is not the coordinator's official duty to apprise parties of the status of the case. In keeping with the Supreme Court's decision in *Petro-Chemical*, we find, however, that Dupuy's contact and reliance on the court coordinator constitutes some evidence of diligence. We by no means find, though, that contacting the court coordinator is the best or most appropriate way for counsel to apprise himself of the status of litigation. Accordingly, we find that there is some evidence to support the trial court's finding that Dupuy was diligent in attempting to discover the entry of the judgment.

■ Having found no error in the trial court's findings that met requirements 2 and 3, as set out in *Petro-Chemical*, we next consider whether a meritorious defense (requirement 1) was presented. In this connection appellant contends, and we agree, that since he lost the benefit of a motion for new trial and/or appeal in the previous cause, that his burden at the bill of review hearing regarding a meritorious defense was to introduce the statement of facts, exhibits and transcript from the prior suit and point out errors which would have justified a reversal in the prior suit had the movant had an opportunity to file a motion for new trial and/or a direct appeal. *Petro-Chemical Transport Co., Inc. v. Carroll*, supra 514 S.W.2d at 245–46. Because the trial court found that there was no error in its previous decision, we must review the statement of facts, exhibits and transcript to see if the trial court erred in it conclusion.

The statement of facts, exhibits and transcript indicate the following facts concerning this case. Sometime in the latter part of 1972, Dr. Robert Thomason and Dr. Elizabeth Thomason, husband and wife, entered into a contract with a Sears department store, represented by Freberg, to construct fences on their homestead ranch. The Sears contract was concluded sometime in the first part of 1973. Upon completing the Sears contract, the Thomasons paid Freberg $500.00 for that work.

Soon thereafter, Dr. Elizabeth told Freberg that she would be interested in having him perform additional tasks on the Thomason homestead. The evidence then becomes conflicting about the origin of the transaction Freberg contends that at sometime later, during the early part of 1973, he met with both Dr. Elizabeth and Dr. Robert and orally agreed with both to build water troughs, lay pipe, fix gates, and work on expanding a loading chute. We have no direct evidence of any other terms of the alleged agreement between Dr. Robert and Freberg. There is evidence in the record that Dr. Elizabeth agreed with Freberg that his payment would be the cost of his labor and materials plus ten percent. There is also a written contract between Dr. Elizabeth and Freberg signed May 13, 1973, which covers various tasks not in-

volved in this suit except for the building of water troughs and the laying of pipe. The contract merely provides that $3000.00 would be paid for tasks agreed to and does not give any terms as to time of payment or time of completion. It was Freberg's testimony that this written agreement with Dr. Elizabeth was entered into about one month after all of the work, made the basis of this suit, was initiated. Dr. Robert, appellant, contends he never made any agreements with Freberg.

According to Freberg, his crews worked on the Thomason homestead off and on during April, May, June, and July of 1973. The work, which normally would not take this long to perform, was delayed because of extremely wet conditions caused by excessive amounts of rainfall.

Dr. Elizabeth died on July 24, 1973. Apparently Freberg last worked on the Thomason homestead on July 25, 1973. Thereafter, though, he was unable to perform any work on the Thomason homestead because he was not permitted onto the premises. The evidence is undisputed that the tasks made the basis of this suit were uncompleted as of July 25, 1973. At some time after Dr. Elizabeth's death, Dr. Robert hired other workmen to finish the job which Freberg had initiated, and at trial admitted that he now uses the water troughs, water lines, and gates that Freberg worked upon. Dr. Robert also admitted that he has used the loading chute and holding pen that Freberg serviced.

Later, Freberg asked Dr. Robert to pay him for his materials and services. Dr. Robert refused and this suit followed. Dr. Elizabeth's estate is not involved in this suit.

■ Appellant, Dr. Robert, brings four points of error. His first point contends that Freberg's cause of action was barred by limitations as a matter of law. We disagree.

Tex.Rev.Stat.Ann. art. 5526(4) (1958), provides:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

\* \* \* \* \* \*

4. Actions for debt where the indebtedness is not evidenced by a contract in writing."

The issue to be resolved in this point of error is whether Freberg's cause of action on his implied contract accrued prior to July 25, 1973 (two years before the filing of this suit). In that regard, the accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another, a cause of action has accrued. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 721 (1945); *Godde v. Wood*, 509 S.W.2d 435, 441 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd, n. r. e.).

■ Appellant, Dr. Robert, urges that the cause of action accrued after each day of service to the ranch such that only those services performed on July 25, 1973, would not be barred by limitations. He cites *Scott v. Walker*, 141 Tex. 718, 170 S.W.2d 718 (1943), *City of Houston v. Finn*, 139 Tex. 111, 161 S.W.2d 776 (1942), and other cases for the proposition that where a party sues in quantum meruit, the cause accrues after the furnishing of labor and materials each day. While this interpretation may apply in some circumstances, it is inapplicable to the facts of this case. The clear holding of both *Scott* and *Finn* is that when a party is basing its actions solely on an implied contract, the cause accrues from the time services are performed, rendered, and received.

In *Scott*, the plaintiff was suing in quantum meruit for housekeeping services rendered over a period of many years without an oral contract or written contract. There, the court held that, without a showing that a contract was entered setting the obligor's payment for housekeeping services at his death, limitations had been running and no recovery could be allowed except for services performed during the two years prior to the filing of the suit. The court then stated that, had an oral contract been entered to give payment to the obligee upon

the obligor's death, that the cause would not have accrued until the obligor's death. See also Annot., 7 A.L.R.2d 198 (1949).

In *Finn*, the court stated that an architect's cause of action in quantum meruit accrues at the time he delivers all his services, plans, sketches, and specifications to his customer. It is undisputed in the instant case that Freberg, through no fault of his, was unable to deliver completed services to Dr. Robert. Consequently, limitations should not have run until sometime after July 25, 1973. Compare *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 276 (5th Cir. 1979).

■ The court in *Scott v. Walker,* supra, stated that, for purposes of recovering on an implied contract, the existence of an express contract is important for determining the period of limitations. In the instant case, there is some evidence that Freberg entered into an oral contract with Dr. Robert and Dr. Elizabeth to perform various tasks on their homestead, but there is no direct evidence of any terms for the time of payment or completion. However, these were not the type of tasks which could continue indefinitely such as the housekeeping services in *Scott*, but rather were tasks with a specific goal. Moreover, the evidence is clear that the tasks contemplated by the parties were not long term in nature but under proper conditions could be started and completed in a relatively brief period of time. Furthermore, these services were not of such a nature that a court would imply a condition of payment at periodic intervals such that limitations would begin to run after, for example, each week's or each month's work. See 66 Am.Jur.2d, Restitution and Implied Contracts, sec. 84, p. 1026 (1973). We find the oral contract here to be a continuing contract; i. e., the contract was to continue until Freberg had completed the improvements according to the directions of the Thomasons. Compare *Godde v. Wood,* supra, 509 S.W.2d on page 441:

"Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been completed), the claim will be treated and considered as an entire demand and limitations will not commence to run until the contract has been finished."

In the instant case, Freberg was never allowed to deliver a finished product or service to Dr. Robert Thomason. Consequently, up to the date of July 25, 1973, the day after Dr. Elizabeth died, Freberg's cause of action against the Thomasons had not accrued, or in other words, limitations had not begun to run. Indeed, Freberg's limitations did not begin to run until after he was first prevented from continuing his tasks. See *Scott v. Walker,* supra. To hold that Freberg's cause of action accrued after each day's work would unduly fragment the time of accrual for each of these indivisible tasks. Compare *Jones v. Lewis,* 11 Tex. 359 (1854); *Caldwell v. Jones,* 63 S.W.2d 761 (Tex.Civ.App.—Amarillo 1933, writ ref'd) (holding that an attorney's cause for services rendered over a period of time accrued when his services had been completely performed); Annot., 99 A.L.R.2d 251, 253 (1965). Appellant's point 1 is overruled.

Appellant's point 3 contends that the trial court erred in denying the bill of review because the court in the previous cause should have found, in effect, that there was no evidence to support the recovery against appellant, Dr. Robert Thomason, when Dr. Elizabeth Thomason was the one who contracted for the improvements on the homestead.

■ Appellant places primary emphasis on the language in Freberg's petition which states that the work was done at the "special instance and request of Dr. Elizabeth Thomason." From this, appellant cites *Woodard v. Southwest State, Inc.,* 384 S.W.2d 674 (Tex.Sup.1964), for the proposition that quantum meruit is not applicable where services were performed at the request of a third party (here Dr. Elizabeth), not the party benefiting from the services (here Dr. Robert). In *Woodard,* though, the court was demonstrating that quantum meruit would not apply because there was an

express contract between the third party *Svalberg* and *Southwest States* and that an implied contract supportive of a claim in quantum meruit could not arise out of the mere acts of performance of the express contract. See *Knebel v. Capital National Bank in Austin*, 518 S.W.2d 795, 800 (Tex. Sup.1974). Also, in *Woodard* the parties sought to be charged for the services rendered had no contact with the plaintiff prior to contracting with Svalberg for the services. The mere receipt of benefit from another's contract does not by itself create a right of action in quantum meruit. Compare *Atkinson v. Jackson Bros.*, 259 S.W. 280, 285 (Tex.Civ.App.—1924), modified in part on other grounds, 270 S.W. 848 (Tex. Comn.App.1925, holding approved).

 In the Instant case there is, indeed, some evidence of Dr. Robert's contact with Freberg from the beginning of the services performed on the Thomason homestead. In addition, there is some evidence of all the elements necessary to prove a case of quantum meruit in this case. As set out in *Montes v. Naismith and Trevino Construction Co.*, 459 S.W.2d 691, 694 (Tex.Civ.App. —Corpus Christi 1970, writ ref'd, n. r. e.), in an action for quantum meruit, the plaintiff must show:

"1) Valuable services were rendered and materials furnished,

2) for the person sought to be charged,

3) which services and materials were accepted by the persons sought to be charged, used and enjoyed by him,

4) under such circumstances as reasonably notified the person[s] sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person[s] sought to be charged."

There appears to be no dispute that elements 1 and 3 above are established by the evidence. The record is clear that pipe, water troughs, labor, etc., were furnished and that Dr. Robert Thomason has used the water troughs, piping, gates and other work either as the defendant left them, or after further services were performed which made them useable. The issue then arises

as to whether there is any evidence to support elements 2 and 4 above.

Dr. Robert, in effect, contends that Dr. Elizabeth was the only one involved in agreements with Freberg, and in this same connection, Dr. Robert contends that he was not notified nor did he expect to have to pay Freberg for these services. Dr. Robert claims his exclusion from the agreement process is evidenced by the written contract of May 13, 1973. Dr. Elizabeth was the only one who signed this agreement. It should be noted, though, that only two of the seven projects sued upon: i. e., the pipelines and the water troughs, were listed in the May 13 agreement. And, of those two, the evidence is conclusive that they were started and well underway prior to the signing of the May 13 contract.

The issue is raised, then, as to whether the services were rendered for Dr. Robert as well as Dr. Elizabeth and whether under these circumstances Dr. Robert was reasonably notified that Freberg would expect to charge him for the services rendered. The evidence is conflicting on this issue. Dr. Robert Thomason stated at trial that his wife operated the ranch as her own business; that any agreement that Freberg would be paid was with his wife; and that he did not even know about Freberg until mid-April of 1973 although he did admit that he discussed the project with Freberg at this time. Dr. Robert also stated that he and his wife kept separate checking accounts and that she used hers for her separate business transactions. He claimed he only talked to Freberg twice; the first time about mid-April of 1973 when he claims he told Freberg where to lay a certain pipe and the second time after Dr. Elizabeth died, when he claims he told Freberg to consult with the executor of Dr. Elizabeth's estate as to finishing the work because the contract was with her alone and he had nothing to do with it.

On the other hand, Freberg stated that the work involved in this suit began on March 17, 1973. He stated that Dr. Robert was fully aware that he was doing this

work; that he had been to the Thomason home several times to talk with Dr. Robert and Dr. Elizabeth concerning the job; that Dr. Robert had helped him find buried water lines on several occasions; that Dr. Robert never personally told him to cease work and that Dr. Robert was made aware that he expected remuneration for his work. In addition, on pages 19 through 20 of the statement of facts, the following discourse took place at trial:

"Q. Mr. Freberg, very simply, in your role as an independent construction contractor, were you called upon to add improvements to the Thomason farm?

A. Yes, I was.

Q. In your role as a construction contractor, did not supervise the work done?

A. I personally supervised it, or had it supervised.

Q. Alright, was the work done according to your instructions and overall supervision?

A. According to my instructions and Dr. Thomason's instructions.

Q. Are you talking about both Dr. Thomasons?

A. Both Dr. Robert and Dr. Elizabeth Thomason."

Indeed, when asked whether Dr. Robert had allowed him to continue the work after Dr. Elizabeth Thomason's death, Freberg stated: "I was not allowed to complete the work as *set forth and agreed to* with Dr. Elizabeth and Dr. Robert Thomason." (Emphasis supplied).

 When considering a no evidence point, as point 3 is, the court must review only that evidence favorable to the judgment of the trial court and disregard all evidence to the contrary. *Garcia v. Prescott*, 570 S.W.2d 562 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd, n. r. e.). In looking only to the evidence favorable to the judgment, one can easily conclude that both Dr. Robert and Dr. Elizabeth were reasonably notified that they would be expected to pay for either some or all of the improvements

and that the improvements were being made for both of them. Consequently, we hold that Dr. Robert Thomason was liable to Freberg in quantum meruit for the value of the improvements.

 Conversely, appellant argues that there is no pleading that Dr. Robert contracted with Freberg to do the work and, therefore, there can be no recovery in quantum meruit. The law is clear, though, that the right to recover in quantum meruit does not grow out of a contract, but is independent of it. The right to quantum meruit is based upon a promise implied by law for beneficial services rendered and knowingly accepted. *Campbell v. Northwestern Nat. Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex.Sup. 1978).

 Appellant further argues that there is no pleading or proof that Dr. Elizabeth was acting as agent for Dr. Robert in this situation. This point is not persuasive. There need not be actual agency on the part of one who helps procure material or labor for a defendant in an action on quantum meruit. *Colbert v. Dallas Joint Stock Land Bank*, 136 Tex. 268, 150 S.W.2d 771 (Tex. Comn.App.1941, opinion adopted); *Electric Wire & Cable Co. v. Ray*, 456 S.W.2d 260, 263 (Tex.Civ.App.—Houston (14th Dist.) 1970, writ ref'd, n. r. e.). Appellant's point 3 is overruled.

 Appellant's point 2 contends that the judgment of the court should be reduced by $500.00 because the appellee judicially admitted in his pleading that he had received a $500.00 payment in connection with this construction. While we agree that appellee's original pleading admits a $500.00 payment, we do not agree that the judgment must be reduced. The measure of damages in an action on quantum meruit ordinarily is the reasonable value of the work performed and the materials furnished. *Houston Lumber Supply Co. v. Wockenfuss*, 386 S.W.2d 330, 336 (Tex.Civ. App.—Houston 1965, writ ref'd, n. r. e.). Any reasonable offset would be deducted from this amount. In this case, though, no findings of fact or conclusions of law were

filed concerning the reasonable value of the work performed and the materials furnished. The pleadings sought a recovery of $2788.10, minus the $500.00 already paid. The trial court granted a judgment for $1317.36, without explaining what the amount represented (plus $600.00 attorney's fees). At this juncture, we can only look to see whether there is any evidence to support a finding of $1817.36 as the reasonable value of the work performed and the materials furnished, from which the $500.00 could be subtracted to arrive at the $1317.36 figure. After considering the evidence, we find some evidence which would support the finding of $1817.36 discussed above. Consequently, appellant's point 2 presents no reversible error and is overruled.

Appellant's point 4, being the last point, in essence contends that the award of $600.00 as attorney's fees cannot be granted if we find no recovery is justified. See Tex.Rev.Civ.Stat.Ann. art. 2226 (1971), *Gulf Coast Operators, Inc. v. Fleming Oil Company*, 393 S.W.2d 954, 958 (Tex.Civ.App.— Houston 1965, no writ). Having overruled appellant's points 1, 2, and 3, we must also overrule this point 4.

The judgment of the trial court is affirmed.