MEMORANDUM OPINION




No. 04-03-00190-CV



H.E. BUTT GROCERY COMPANY, INC.,


Appellant/Cross-Appellee



v.



RENCARE, LTD.,


Appellee/Cross-Appellant



From the 38th Judicial District Court, Medina County, Texas


Trial Court No. 01-05-015527-CV


Honorable Mickey R. Pennington, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: February 4, 2004


REVERSED AND RENDERED

 H.E. Butt Grocery Company, Inc. ("HEB") appeals a final judgment rendered in favor of
RenCare, Ltd. based on RenCare's quantum meruit claim. HEB asserts three reasons it contends that
the trial court erred in entering judgment in favor of RenCare. We sustain HEB's first issue on the
basis that the evidence conclusively established that HEB had paid more than the reasonable value
of RenCare's services as determined by the jury; therefore, we do not address HEB's alternative
issues. See Tex. R. App. P. 47.1 (opinions should only address issues necessary to final disposition
of appeal). By cross-appeal, RenCare also challenges the judgment, contending: (1) HEB's highly
inflammatory closing argument prejudiced RenCare; (2) the jury's damage award failed to award
RenCare the reasonable value of its services; (3) the trial court erred in admitting into evidence rates
paid by RenCare to other insurance companies; and (4) other evidentiary errors caused the entry of
an unfavorable judgment. We reverse the trial court's judgment and render judgment that RenCare
recover no damages from HEB because the damages awarded by the jury did not exceed the credit
to which HEB was entitled for payments previously made by HEB to RenCare.

Background


 HEB was a self-insurer of a health benefit plan which provided health benefits to employees
and their dependents. HEB contracted with Blue Cross/Blue Shield ("Blue Cross") to administer the
plan. A dependent of an HEB employee sought dialysis services from RenCare. RenCare alleged that
it contacted Blue Cross to verify benefits and was told that the treatments had no insurance
limitations. After RenCare began submitting its claims, and after it was clarified that the patient did
not have Medicare coverage, Blue Cross began to pay RenCare based on the allowed amount for the
dialysis service. The allowed amount was a comprehensive per diem amount of $400. The total
amount paid by HEB to RenCare for services it rendered for the patient in question was $194,704.
Eventually, RenCare sued HEB for fraud, negligent misrepresentation, and quantum meruit. A jury
found that HEB was not liable for fraud or negligent misrepresentation, but that RenCare was entitled
to recover $184,859.00 as the reasonable value of its compensable services on its quantum meruit
claim. Both parties appeal the judgment entered by the trial court based on the jury's verdict.

Quantum Meruit


 In a suit on quantum meruit, the plaintiff is entitled to recover the reasonable value of the
services performed. Colbert v. Dallas Joint Stock Land Bank, 150 S.W.2d 771, 776 (Tex. 1941); 

Rocha v. Ahmad, 676 S.W.2d 149, 156 (Tex. App.--San Antonio 1984, writ dism'd). The amount
determined by the jury to be the reasonable value of the services performed, however, must be offset
by the amount previously paid to the plaintiff for such services. Davidson v. Clearman, 391 S.W.2d
48, 49, 52 (Tex. 1965) (rendering judgment for amount determined by the jury to be the reasonable
value plaintiff was allowed to recover ($27,150.00) less the $4,000 previously paid by the defendant
to the plaintiff); Thomason v. Freberg, 588 S.W.2d 821, 830 (Tex. Civ. App.--Corpus Christi 1979,
no writ) (noting any reasonable offset must be deducted from the amount of damages awarded as the
reasonable value of the services). 

 During the charge conference, HEB sought to expressly instruct the jury that they should limit
the damage award to the reasonable value of RenCare's services in excess of the amount HEB
previously paid RenCare. HEB's counsel stated that his objection to the question was, "that it fails
to limit the jury's consideration to the reasonable value of the services in excess of the amount that
RenCare has already been paid." RenCare objected to this request, and the trial court sustained the
objection. The question presented to the jury was, "What is the reasonable value of such
compensable services at the time and place they were performed?" Accordingly, the jury was asked
the reasonable value of the services, not the reasonable value of the services in excess of the amount
previously paid. Based on the jury's finding, HEB was entitled to an offset of the amount it
previously paid, which amount totaled $194,704. Since the evidence conclusively established that
HEB paid an amount in excess of the amount of damages awarded by the jury, the trial court erred
in entering judgment in favor of RenCare.

Closing Argument


 In its first cross-point, RenCare contends that "HEB's counsel delivered an outrageous jury
argument, given for the sole purpose of inciting prejudice against RenCare." RenCare takes issue both
with the statements made by counsel and with counsel having spoken "in a loud, harsh voice,
marching back and forth in front of the jury box." 

 Specifically, RenCare contends that HEB's counsel used "vile epithets" because counsel: (1)
pointed at RenCare's representative, Bob Ehl, and questioned the location of phone records that
would prove RenCare's claim that it had called to verify benefits; (2) referred to letters written by Ehl
as hateful, nasty, and cruel; (3) referred to Ehl as a jailhouse lawyer, which RenCare contends implied
to the jury that Ehl should be in jail; and (4) used profanity by making references to "God's name"
and "God Almighty." Rencare further contends that HEB's counsel "accused Mr. Ehl of filing
unfounded lawsuits to extort settlements" by referring to the other lawsuits RenCare had filed against
other insurance companies. RenCare also objects to HEB's counsel referring to meetings between
a RenCare employee, Ruth Frazier, and RenCare's counsel before Frazier testified. RenCare
contends that these references "accused RenCare's attorney of manufacturing evidence through Ruth
Frazier." RenCare asserts that HEB's counsel "accused Ms. Frazier of lying under oath" in the
course of questioning the differences between Frazier's deposition and her trial testimony. RenCare
further asserts that HEB's counsel "accused RenCare's counsel of 'tricking'" an HEB employee
during deposition. RenCare contends that this reference to "trickery" "was intended to denigrate
counsel's character as an attorney." Finally, RenCare takes issue with HEB's counsel referring to
RenCare's fraud claim as a criminal charge and arguing that no other claims had been filed against
HEB.

 HEB initially responds that RenCare failed to preserve error. Generally, in order to obtain
reversal on the basis of improper jury argument, appellants must prove (1) that an error was made
in argument; (2) that the argument was not invited or provoked; (3) that the error was preserved by
the proper objection, motion to instruct or motion for mistrial; and (4) that the argument was not
curable by an instruction, prompt withdrawal, or reprimand." Standard Fire Ins. Co. v. Reese, 584
S.W.2d 835, 839 (Tex.1979); Macias v. Ramos, 917 S.W.2d 371, 375 (Tex. App.--San Antonio
1996, no writ). In this case, RenCare objected to the reference to the fraud allegation as a criminal
charge and to HEB's counsel "abusive style of argument and turning and speaking directly to Mr.
Ehl"; however, the trial court sustained the objections and RenCare failed to ask that the jury be
instructed to disregard or move for a mistrial. The trial court's sustaining of the objections indicated
to the jury that the fraud claim was not a criminal charge. RenCare fails to explain how the reference
to the fraud claim as a criminal charge in closing argument was the basis for the jury's verdict. The
only other portion of the jury argument to which an objection was made and about which RenCare
complains on appeal was HEB's counsel stating that no other lawsuits were pending against HEB.
In response to the objection, HEB's counsel stated, "I think that [HEB's employee] said that there
were no other claims, but you go by what she said. I guarantee you that she said that there were no
lawsuits." Accordingly, HEB's counsel was summarizing for the jury what he believed the evidence
to be, but he also told the jury to "go by what [the employee actually] said." HEB's counsel appears
to have been referring to the testimony in the record regarding whether HEB had been sued by any
another provider with regard to payments made under its health benefit plan.

 With regard to RenCare's remaining complaints about closing argument, RenCare failed to
make any objections. In its reply brief, RenCare asserts that no objection was required because the
closing argument was "overwhelmingly prejudicial." Accordingly, RenCare contends that the jury
argument was incurable. 

 An objection is not required in order to preserve error if the error is deemed to be incurable.
Otis Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968); Macias, 917 S.W.2d at 375.
However, there are only rare instances of incurable harm arising from improper jury argument. Reese,
584 S.W.2d at 839; Macias, 917 S.W.2d at 375. The test for incurable error in jury argument is
whether the argument, when viewed in light of the entire record, was so inflammatory as to strike at
the heart of the adversarial process or appeal to fundamental prejudices. Macias, 917 S.W.2d at
375. In such a case, an instruction to the jury to disregard the argument would not eliminate the
probability that an improper verdict resulted from the error. Id.

 Having reviewed the record, we conclude that the jury argument in the present case does not
rise to the level of incurable error. Trial counsel is given great latitude in closing argument to discuss
the facts and the issues. Sanchez v. Espinoza, 60 S.W.3d 392, 395 (Tex. App.--Amarillo 2001, pet.
denied). Leeway given to trial counsel includes the opportunity to encourage the jury to weigh,
evaluate, and test the evidence before it. Id. Referring to RenCare's letters as hateful, nasty, and
cruel does not rise to the level of a "vile epithet." In addition, we do not believe that the jury would
infer from counsel's reference to Ehl playing "jailhouse lawyer" that Ehl belonged in jail. Finally, we
do not believe that counsel was referring the Ehl as being a "vampire" when counsel stated, "if there
is any question about fraud, let me just tell you what puts the final stake in the heart of the vampire
here." Most of the argument by HEB's counsel about which RenCare complains was meant to attack
the credibility of Ehl and Frazier, and the argument was not so inflammatory as to strike at the heart
of the adversarial process or appeal to fundamental prejudices. RenCare's first cross-point is
overruled.

Damages


 In its second cross-point, RenCare contends that the jury's failure to award a greater amount
of damages resulted in RenCare being paid zero dollars for all medications, supplies, and special
consultations. Because RenCare is requesting a new trial, the contention is a challenge to the factual
sufficiency of the evidence on an element for which RenCare had the burden of proof.

 When a party attacks the factual sufficiency of an adverse finding on an issue on which the
party has the burden of proof, the party must demonstrate on appeal that the adverse finding is against
the great weight and preponderance of the evidence. Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001). The court of appeals must consider and weigh all of the evidence, and can set aside
a verdict only if the evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust. Id.

 In this case, Ehl testified regarding the manner in which he set prices for each of the revenue
codes on RenCare's bill. Ehl testified that he relied on the usual charges listed on two websites
(American Medical Association and Medispan) and on information he personally obtained as a
member of the National Renal Administrators Association. During cross-examination, Ehl was
questioned regarding certain line items appearing on the bill. For example, Ehl testified that RenCare
charged $150 for fifty pairs of gloves that cost RenCare $25. Ehl was asked whether the formula he
developed to determine RenCare's usual charge was "such though that a box of gloves that cost
twenty-five dollars, when you apply your formula to it, then it's okay to charge a hundred and fifty
dollars." Ehl responded, "Yes, sir." With regard to the nutritional counseling, RenCare's bill
reflected a charge of $185. Ehl stated that the charge was per hour and that the nutritional counselor
could perform six or seven consults each day. HEB's attorney then multiplied the hourly rate by the
number of consults per day. He then multiplied that number by the number of days per week and by
fifty weeks per year. The product of the multiplication was $323,750. Ehl testified that the
nutritional counselor was paid between fifty and sixty thousand a year, plus benefits. Ehl also testified
that the typical treatment counseling for which RenCare charges $190 lasts between thirty minutes
to an hour and the medical consultation for which RenCare charges $175 would take from twenty
minutes to an hour. In response to this line of questioning, Ehl stated that the charges for the
consultations "[didn't] work that way."

 In addition to RenCare's actual bills and Ehl's testimony, evidence was presented that many
insurance companies charge a per diem rate for dialysis services that covers all services, supplies, and
medications used during the dialysis. Ehl admitted that RenCare had previously contracted with Blue
Cross to receive a $400 per diem for its services. Ehl testified that RenCare contracted with one
insurance company to receive a $250 per diem for its services. Evidence also was presented that
HEB relied on Blue Cross's experience in setting rates for medical services, and that Blue Cross
typically paid a per diem of $400 for dialysis treatment.

 The jury's award of $184,859 for the "reasonable value of [RenCare's] compensable services
at the time and place they were performed" was within the range of the evidence presented at trial.
The jury weighed the credibility of Ehl's testimony in determining whether the charges listed in
RenCare's invoices were reasonable. The jury evaluated whether a per diem charge was more
reasonable than an itemized charge for each service, supply, and medication. The jury may have
awarded damages based on a per diem or by adding the line items from RenCare's bill that the jury
believed to be reasonable charges. We cannot speculate as to the manner in which the jury reached
its award. Peterson v. Reyna, 908 S.W.2d 472, 476 (Tex. App.--San Antonio 1995), modified on
other grounds, 920 S.W.2d 288 (Tex. 1996). The jury's damage award is not so against the great
weight and preponderance of the evidence that it is clearly wrong and unjust. RenCare's second
cross-point is overruled.

Evidentiary Rulings


 In its final two cross-points, RenCare contends that the trial court made numerous erroneous
evidentiary rulings. RenCare contends that the trial court erred in allowing the following irrelevant
evidence to be introduced: (1) the contract between RenCare and United HealthCare and the payment
structure used in other plans; (2) other lawsuits RenCare filed against other insurers; (3) Ehl's own
dialysis treatment and payment problems; (4) other providers' acceptance of Blue Cross's per diem
rate; (5) the absence of other suits against HEB by service providers; and (6) the ownership structure
of RenCare. Finally, RenCare contends that the trial court erred in allowing an HEB employee to
testify that HEB had been fair and honorable in HEB's dealings with RenCare because the testimony
was an inadmissible personal opinion.

 Relevant evidence means "evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less probable that it would be
without the evidence." Tex. R. Evid. 401. The admission and exclusion of evidence is committed
to the trial court's sound discretion; thus, we review this issue under an abuse of discretion standard.
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995).

 With regard to the evidence of RenCare's contract with United HealthCare, the payment
structure used in other plans, and other providers' acceptance of Blue Cross's per diem rate, the
evidence was relevant to the reasonable value that should be awarded for RenCare's services. With
regard to Ehl's own dialysis, RenCare opened the door to this testimony by initially questioning Ehl
regarding this treatment. With regard to whether HEB had been sued by other providers, the
evidence has some tendency to enable the jury to assess whether it was more or less probable that
HEB had intentionally misrepresented its benefits plan. With regard to other lawsuits RenCare had
filed against other insurers, the line of questioning was attempting to show that RenCare claimed
other insurers also made misrepresentations regarding their benefits when RenCare called to verify
benefits. One of the issues in the case was whether RenCare made the phone call to verify benefits
and whether it asked the necessary questions to elicit the information regarding limitations on those
benefits. Evidence that RenCare claimed to have made similar phone calls to other insurers and that
those insurers were alleged to have made similar misrepresentations regarding benefit limitations is
relevant to whether the events transpired as RenCare claimed. Even assuming that the trial court
erred in admitting evidence regarding RenCare's ownership structure and the personal opinion of
HEB's employee regarding whether HEB had been fair, RenCare fails to explain how the admission
of that evidence was harmful. RenCare's third and fourth cross-points are overruled.

Conclusion


 Because the amount HEB previously paid RenCare exceeded the damages awarded by the
jury for the reasonable value of RenCare's services, the trial court erred in entering judgment in
RenCare's favor. The judgment of the trial court is reversed, and judgment is rendered that RenCare
take nothing on its claims against HEB.


 Catherine Stone, Justice